Filed 9/30/22  In re C.W. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.W. et al., Persons Coming Under the Juvenile Court Law. | B315825 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.W.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21LJJP00410A-B) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

S.W. (Father) appeals a disposition order after the juvenile court sustained a petition and declared his children dependents of the court. (Welf. & Inst. Code, §§ 300, 360, subd. (d).)[1] He contends that the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) are unsatisfied. (25 U.S.C.S. § 1901 et seq; Welf. & Inst. Code, § 224 et seq.) No one asked extended family members if the children may be Indian. (§ 224.2, subd. (b).)

We conclude that any deficiency in the ICWA inquiry did not cause a miscarriage of justice. (Cal. Const., art. VI, § 13.) The parents, raised by their biological families, denied Indian ancestry. No evidence suggests that the parents' knowledge of their heritage is incorrect or that the children may have Indian ancestry. Because there is no reason to believe the children are Indian, any failure to inquire of extended family members was harmless and can be cured by further inquiry as the case progresses. (§ 224.2, subd. (a).) We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and P.P. (Mother) moved with C.W. to California from the Midwest in 2018. C.W. was two years old at the time. In early 2019, respondent Los Angeles County Department of Children and Family Services (DCFS) learned the family was homeless. C.W. was marooned all day in the family car, where his parents smoked marijuana with the windows closed. Mother tested positive for marijuana at four prenatal visits before giving birth to P.W. in March 2019.[2]

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

In July 2021, a mandated reporter told DCFS that C.W. was medically neglected, with severe scoliosis and impaired vision. If left untreated, he could suffer irreversible loss of vision and organ damage. His speech was greatly delayed. Mother was aware of C.W.'s medical conditions but did not take him or P.W. to doctors or dentists, or enroll C.W. in school.

C.W. fell and lacerated his head, then sustained a chemical burn when Mother applied glue to the gash. The parents did not seek care for days after C.W. developed an infection, began vomiting, and had fever and diarrhea. A social worker met C.W. at the hospital and observed his speech delays.

When interviewed for the detention report, both parents denied Indian ancestry. A petition filed August 11, 2021, alleged that Mother and Father sought no treatment for C.W.'s scoliosis and strabismus; further, they waited four days before seeking treatment for C.W.'s head injury. Their medical neglect places C.W. and P.W. at risk of serious physical harm. The petition contains an ICWA-010 form stating that there is no reason to believe the children are Indian.

The social worker went to an encampment in Palmdale where the family was living and discovered that their RV had been destroyed by fire. The maternal grandmother (MGM) told the social worker by phone that the family moved to Illinois to live with the paternal grandfather (PGF) after losing all their belongings in the fire.

The parents did not attend the detention hearing on August 16, 2021. The court found no reason to know the children are Indian. It ordered Mother and Father to keep DCFS, their attorneys, and the court aware of any new information relating to

possible ICWA status. The court found a prima facie case for detaining the children.

The court signed a protective custody warrant directing DCFS to take custody of the minors. DCFS employees retrieved them in Illinois and placed them with a caregiver in Los Angeles.

Mother and Father signed ICWA-020 forms on August 31, 2021, before a progress hearing in which they chose not to participate. They denied having tribal membership, or that the children are eligible for membership, or that their parents, grandparents, or other lineal ancestors are or were members of a tribe. The court found ICWA does not apply based on the parents' denial of Indian heritage. The DCFS jurisdiction hearing report cites the court's finding that ICWA does not apply but does not state that extended relatives were interviewed.

The parents waived their appearances for the jurisdiction and disposition hearing on October 14, 2021. The court sustained the petition, declared the children dependents of the court, and removed them from parental custody to protect their health. The parents were given reunification services and visitation, though they are in Illinois and the children are in DCFS custody in California. Father appeals the disposition order.

## DISCUSSION

We review ICWA findings under a substantial evidence standard. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.) If undisputed facts show the initial inquiry into Indian heritage was deficient, we determine whether the deficiency invalidates findings that ICWA does not apply. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, review granted Sept. 21, 2022, S275578 (*Dezi*).)

4

ICWA establishes standards to follow before an Indian child is removed from parental custody. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881–882.) An "Indian child" is "either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C.S. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a).) From "the initial contact" with a family, DCFS and the court have "an affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) This means "asking the child, parents, legal guardian, Indian custodian, extended family members, and others who have an interest in the child . . . whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) At initial appearances, the court must ask if a participant knows whether the child is Indian. (*Id.,* subd. (c).) Additional inquiry and notice to tribes is required only if there is "reason to believe" or "reason to know" that the child is Indian. (*Id.*, subds. (d), (e) & (f).)

Father urges reversal because DCFS failed to " 'interview extended family members to obtain whatever information they may have as to the child's possible Indian status.' " (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1015; § 242.2, subd. (b).) We agree DCFS fell short in its initial ICWA duty: The social worker called MGM when the family disappeared from Palmdale but did not ask her, PGF, or others about Indian heritage. (§ 242.2, subd. (b).) Despite the shortcomings in the DCFS inquiry, this does not justify reversal of the jurisdiction or disposition orders.

Some courts have held that failure to question extended family members requires automatic reversal, "no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court." (*Dezi, supra,* 79

Cal.App.5th at p. 777, rev.gr.) We do not follow the automatic reversal rule. (*Id.* at pp. 782–785.)

"In our view, an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Dezi, supra,* 79 Cal.App.5th at p. 779, fn. omitted, rev.gr.)

Father cites nothing in the trial record indicating possible Indian heritage. Nor does he make a proffer on appeal of such heritage. (*Dezi, supra,* 79 Cal.App.5th at p. 786, rev.gr.; Code Civ. Proc., § 909.) Father does not assert even a bare claim of membership in a federally recognized tribe or that his children are eligible for tribal membership as "the biological child[ren] of a member of an Indian tribe." (25 U.S.C.S. § 1903(4).)

The record shows no reason to believe C.W. and P.W. are Indian children. The parents currently live with PGF; Mother was raised by MGM and saw her father while growing up. Thus, there is no concern the parents do not know their heritage. Mother and Father verbally denied Indian heritage when interviewed for the detention report, then formally attested on official forms that they have no Indian heritage. They elected not to appear remotely via Webex for the detention or jurisdiction hearings, to be questioned on the record about Indian heritage. (§ 224.2, subd. (c).) Counsel for the parents and children did not suggest possible Indian heritage or demand further inquiry.

A judgment cannot be set aside unless it has resulted in a miscarriage of justice, meaning "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Dezi, supra,* 79 Cal.App.5th at p. 779, rev.gr.) Father has not shown a miscarriage of justice.

We note that this case is in its earliest phase. As it progresses, DCFS and the court have "an affirmative and *continuing* duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a), italics added.) Father has now brought his ICWA inquiry claim to the attention of DCFS and the court. The parents and extended family members can still be questioned about Indian ancestry, by DCFS and in court. The court's prior determination that the children are not Indian may be superseded if the court or DCFS receives information about Indian ancestry that contradicts the parents' denials of such ancestry. (*In re S.H.* (2022) 82 Cal.App.5th 166, 176–177, 179 [declining to reverse a disposition order due to a deficient initial ICWA inquiry, where the agency and the court were aware of their continuing duty to inquire about Indian ancestry].)

**DISPOSITION**

The October 14, 2021 adjudication and disposition orders are affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

8